GIRARD TRUST COMPANY, TRUSTEE, APPELLANT, V. MARILLA J. DIXON ET AL., APPELLEES.

FILED JUNE 13, 1911.   No. 16,402.

Limitation of Actions: MORTGAGES: ACKNOWLEDGMENT OF DEBT. Under section 22 of the code, signed and delivered letters written by a purchaser of mortgaged land to the holder of the mortgage arrest the running of the statute of limitations against foreclosure, where the letters, when reasonably and properly construed, contain an acknowledgment of the mortgage and of the existing indebtedness; no technical phrase or particular form of expression being required.

APPEAL from the district court for Logan county: HANSON M. GRIMES, JUDGE. Reversed.

*Albert Muldoon,* for appellant.

*Hoagland & Hoagland, contra.*

ROSE, J.

Plaintiff is attempting to foreclose a 500-dollar mortgage on a quarter-section of land in Logan county. The trial court sustained a demurrer to the petition on the ground that the action is barred by the statute of limitations. From a judgment of dismissal plaintiff has appealed.

The note secured by the mortgage was dated February 10, 1892, and was due March 1, 1897. The suit was begun

September 9, 1907. The mortgage was executed by Abel Dixon and Marilla J. Dixon. The McKinley-Lanning Loan & Trust Company was mortgagee. Plaintiff is the holder of the mortgage. Through mesne warranty deeds duly recorded defendant John R. Penner acquired from the mortgagors the legal title to the mortgaged land. The deed in which Penner was grantee was dated September 22, 1897, and it contains covenants by the grantor therein as follows: "I am lawfully seized of said premises." "They are free from incumbrances, except a mortgage to the McKinley-Lanning Loan & Trust Company for the sum of $500." "I have good right and lawful authority to sell the same, and I, with my executors and administrators, shall warrant and defend the same unto the said John R. Penner, his heirs and assigns forever against the lawful claims and demands of all persons whomsoever, except the above described mortgage and taxes." This mortgage was the subject of correspondence between Penner and plaintiff's agent from January 21, 1906, until November 29, 1906, but the letters are too voluminous to be reproduced here. January 21, 1906, less than ten years after the debt had matured, Penner wrote a letter to plaintiff's agent in regard to the land and mortgage in controversy, saying, among other things: "I thought I would write you a few lines in regard to that piece of land you are agent here for. I just found out that you were the agent for it here. Write to me, if you come to some kind of terms as to the mortgage. There is more against it than it is worth." The same letter also contains the statement that the original mortgagor had offered to release the mortgage for $200, and continues: "I would like for you to see just what you can do about the matter, and let me know at once. If we can make a deal, it will be cash."

In reply to a letter demanding settlement in full by September 1, 1906, and threatening foreclosure, Penner wrote further, August 23, 1906: "I got my attorney to write you in regard to a settlement. He told me he could keep you out of the place for four years, but I would like

to make some settlement with you without any trouble. I can't pay you all this fall, for I got hailed out and I am hard up. I will pay you part and renew the mortgage, or, if you knock off some, I might borrow the money and pay it all."

Plaintiff made the following proposition to Penner, September 14, 1906: "If you will pay all the delinquent taxes, including the year of 1905, and remit us $115 for credit on the loan, we will make you a new loan on the land of $500, payable in three annual instalments with interest at the rate of 7 per cent., you to bear all the expense of the continuation of the abstract, recording of mortgage, etc. This is the very best and the last proposition we will make you. If it is not accepted within ten or fifteen days we will pay the taxes and commence foreclosure."

This was answered September 25, 1906, as follows: "I will accept the proposition you wrote me and I will send you $115 and pay one hundred taxes down and the rest later. I can't pay it all this fall. Fix out the papers and send and I will sign them." Because Penner did not agree to pay the taxes in full, the terms of his acceptance were rejected and plaintiff's former proposition was renewed as made. In reply Penner wrote: "Fix out the mortgage on that land and send it up, or come and I will pay the taxes. I believe you had better come or send a man."

June 21, 1907, plaintiff wrote another letter to Penner calling his attention to what appeared to be an error in the amount of interest due, and concluding: "We desire to arrange for a satisfactory settlement with you, and would be very glad to have you write us promptly."

The letters are set out in full in the petition, which states a cause of action, unless it shows on its face that foreclosure is barred by the statute of limitations. The action was commenced more than 10 years after the note matured, and the petition shows that nothing was paid on the debt or interest after March 1, 1894; but plaintiff insists that the bar of the statute has been removed under the

Girard Trust Co. v. Dixon.

terms of section 22 of the code, which declares: "In any cause founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same, shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise."

After referring to the letters pleaded, Penner states his position as follows: "It is clear therefore the only inference that can be drawn from this correspondence is that there were negotiations pending between a party claiming to own an old mortgage upon the real estate and a person who claimed the ownership of the property, but who was not under legal obligations with reference to said mortgage, for a settlement and compromise of their controversy; that the owner of the land made an inquiry as to what kind of a settlement could be made, and the owner of the mortgage made a proposition of settlement; which after some controversy was accepted, and then the owner of the mortgage withdrew it. There is nothing in the letters of Penner unconditionally acknowledging a present subsisting debt upon this property in any definite amount, with a promise either expressed or implied to pay the definite amount, or admission that the land was liable for the payment of said definite sum. There was only a conditional agreement on his part to pay a certain sum to the plaintiffs in full satisfaction of their claim. There was nothing in the letters of Penner from which it may be inferred that he intended to prolong the time of legal limitation within which the plaintiffs might prosecute their action. When the plaintiffs by express letter repudiated the acceptance of their own proposition, the effect of this correspondence upon plaintiffs' cause of action was destroyed."

To prevent the barring of the action by an acknowledgment of the debt, a definite promise to pay it was unnecessary. In *Devereaux v. Henry*, 16 Neb. 55, the code was construed thus: "Section 22 of the civil code provides

Girard Trust Co. v. Dixon.

three ways by which an action on contract may be taken out of the operation of the statute: (1) By the payment of part of the principal or interest. (2) By an acknowledgment in writing of an existing liability, debt, or claim, signed by the party to be charged. (3) By a promise of payment in writing, signed by the party to be charged. The statute does not require that all of those things shall exist before a cause of action is taken out of the operation of the statute, but only requires that some one of them shall exist; hence, if any one of these things transpires, then the cause of action is taken out of the operation of the statute."

In an opinion by the present chief justice, it was said: "While the statute requires an acknowledgment or promise, yet it is not necessary that either the word 'acknowledge' or 'promise' should be used by the party making the acknowledgment or promise. If the writing, by a reasonable and proper construction, amounts to an acknowledgment or promise, it is sufficient." *Rolfe v. Pilloud,* 16 Neb. 21. For the purpose of making such an acknowledgment, "no set phrase or particular form of language is required." *Harms v. Freytag,* 59 Neb. 359. In the case last cited it was held: "A letter in which a surety on a note states to the payee that he is informed that the note, describing it, is not paid, and asks the payee to collect the money due upon it, and declares that he 'will not longer be held good for the note' in case it be not promptly collected, is a sufficient acknowledgment of the indebtedness to arrest the running of the statute of limitations."

In *In re Claim of Bucker v. Estate of Korff,* 5 Neb. (Unof.) 194, the following rule was adopted: "A writing, to constitute an acknowledgment sufficient to take a debt out of the statute of limitations, must recognize the debt as existing, and contain nothing inconsistent with an intention on the part of the debtor to pay it."

Within the meaning of the code as construed by this court did Penner acknowledge the existence of the mortgage and of the debt secured by it? His letters must be

39

considered in the light of surrounding circumstances as disclosed by the petition. When he bought the land he accepted a deed in which the mortgage was recognized as an existing incumbrance. No part of the original debt has ever been paid. No interest was paid after March 1, 1894. Before the statutory period of ten years had run, and while the land was bound by the lien of the mortgage, Penner wrote to the holder thereof: "There is more against it than it is worth." This statement was in writing and refers to plaintiff's security for the debt. It was made when the lien was in full force, for the purpose of procuring for Penner's own benefit a release of the mortgage for less than the amount due thereon. The language, in the sense used, means that plaintiff's mortgage incumbers Penner's land for more than the land is worth.

Less than ten years after the debt matured Penner also wrote: "I got my attorney to write you in regard to a settlement. He told me he could keep you out of the place for four years." This, when construed with all the facts pleaded, is saying, inferentially at least, that plaintiff had a valid claim secured by mortgage which could be fore-closed after four years of litigation. The statements that "I can't pay you all this fall," that "I will pay you part and renew the mortgage, or, if you knock off some, I might borrow the money and pay it all," are of the same import as expressions in former letters and refer to what the writer thereof regards as an existing debt. When Penner's part of the correspondence is all considered, it clearly amounts to such an acknowledgment of the mortgage and of the debt secured as to arrest the running of the statute of limitations. The acknowledgment of the mortgage was an acknowledgment of the debt secured. *Foster v. Bowles*, 138 Cal. 346, 71 Pac. 494. In this view of the facts pleaded and of the law applicable thereto, the petition does not show on its face that foreclosure is barred. Cases announcing a different doctrine cannot be followed here under the code as construed by this court.

For the error in sustaining the demurrer, the judgment

below is reversed and the cause remanded for further proceedings.

REVERSED.

FAWCETT, J., dissenting.

The opinion in this case seems to be predicated upon section 22 of the code, but to my mind this section has no application to the case at bar. That section contemplates an acknowledgment of an *existing liability for the debt*. Penner was not liable for the debt, nor did he make any payment thereon. For the purpose of removing the lien of the mortgage from the land which he had purchased, but which mortgage he had not assumed or agreed to pay, he offered to himself execute a note and mortgage for a specific sum. While this offer was at first accepted, it was subsequently refused by plaintiff. Nothing whatever was done under it by either party. Under these circumstances I do not think there is anything in what he did which could operate to toll the running of the statute of limitations. I think the district court was right and the judgment should be affirmed.